# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMATULLAH A. AL-MAHDI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No.  01-1014 (JR) |
| | : | |
| DISTRICT OF COLUMBIA | : | |
| PUBLIC SCHOOLS, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

This matter comes before the Court on defendant's motion for summary judgment.

Having considered the motion, plaintiff's opposition, and the entire record of the case, the Court

will grant summary judgment for defendant.

## I.  BACKGROUND

Plaintiff is female African-American Muslim who dresses in Muslim attire, keeping her

head wrapped and her body fully covered.  Pl.'s Decl., ¶¶ 1, 4.[1]  She brings this action against the

District of Columbia under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended,

42 U.S.C. § 2000e *et seq*., alleging that defendant discriminated against her on the basis of her

religion.[2]

---

[1]    Plaintiff's declaration ("Pl.'s Decl.") was submitted as an exhibit to her memorandum in opposition to defendant's summary judgment motion ("Pl.'s Opp.").  *See* Pl.'s Opp., Ex. A.

[2]    Plaintiff filed her *pro se* complaint in 2001.  Counsel appointed to represent plaintiff in this action entered an appearance in January 2005.  Plaintiff since has not moved to amend the complaint.

(continued...)

For the 1999-2000 school year, plaintiff was a second-grade teacher at Walker-Jones Elementary School in Washington, D.C.  *See* Compl. at 1; Pl.'s Decl., ¶ 2.  At that time, Andre Roach was the school's Principal, and Ulysses Johnson was the Assistant Principal.[3]  *See* Pl.'s Decl., ¶¶ 4, 5.  Plaintiff was assigned a class of 22 students, and was provided an educational aide daily according to a schedule.  *Id.*, ¶ 6; *see* Def.'s Mot., Ex. 1 (November 6, 2000 letter from Mr. Johnson to Legal Services Branch), & Ex. 7 (schedule for educational aides).[4]  Staff noted concerns about plaintiff's knowledge of the second-grade curriculum and her ability to control and discipline her class.[5]  *See* Def.'s Mot., Ex. 2-5.  Because of parent complaints about the lack of order in plaintiff's class, by October, 10 children had been transferred to another class.  *Id.*, Ex. 1.  Plaintiff was offered recommendations for improving classroom management, but made little improvement.  *See id.*, Ex. 1, 4, 5.

According to plaintiff, Mr. Johnson treated her differently since the first day of school because she is Muslim.  *See* Pl.'s Decl., ¶ 4.  Because of Mr. Johnson's alleged discriminatory

---

[2](...continued)
The complaint is not a model of clarity.  It makes no mention of plaintiff's religion, and alleges discrimination only in the vaguest terms .  Based on counsel's representations and the parties' apparent assumptions, this case proceeds as a Title VII claim in which plaintiff alleges discrimination based on her religion.

[3]    Mr. Johnson apparently was promoted to Principal for the 2000-2001 school year. *See* Def.'s Reply, Ex. A (November 6, 2000 letter from Mr. Johnson to plaintiff).

[4]    Plaintiff explains that teacher's aides "routinely helped students with assignments, graded papers, monitored and observed student behavior, and disciplined students when they acted out."  Pl.'s Decl., ¶ 6.  She further alleges that Mr. Johnson instructed the aides not to discipline students in plaintiff's class or to perform other functions.  *Id.*, ¶¶ 17, 19, 23.

[5]    Allegedly, there were incidents of students running in the classroom, pushing each other, throwing chairs, and making excessive noise.  *See* Def.'s Mot., Ex. 1.

animus on account of plaintiff's religion, he purposely compromised her ability to teach by transferring disruptive students into her class, by humiliating her in the presence of colleagues, students and parents, by withholding classroom assistance available to other teachers, and by instructing other staff to refuse plaintiff's requests for support.  *See id.*, ¶¶ 6, 22, 23-26, 33-36, 48, 51.  In addition, Mr. Johnson allegedly denied her request for leave to celebrate the Muslim holiday of Eid-al-Adha and her marriage in March 2000, and denied requests for sick leave in May 2000, although leave was granted for others.[6]  *Id.*, ¶¶ 39-40, 46.  She allegedly experienced physical illness and emotional distress because of Mr. Johnson's alleged harassment.  *Id.*, ¶¶ 46-47.

Plaintiff believed that Mr. Johnson "deliberately made [her] working conditions so intolerable that [she] would face no other option except to resign."  Pl.'s Decl., ¶ 54.  She did not return to teach the following school year.  Mr. Johnson placed her on absent without leave ("AWOL") status effective September 12, 2000, having recorded plaintiff's nine-day absence since the beginning of the 2000-2001 school year.  Def.'s Reply, Ex. A (Sept. 12, 2000 letter from Mr. Johnson to plaintiff).  Ultimately, plaintiff' resigned, and defendant officially terminated her employment effective August 31, 2000.  Def.'s Mot., Ex. 1, 8 (Personnel Action dated March 17, 2004).

---

[6]     Mr. Johnson apparently denied plaintiff's request for 17 days' annual leave in May 2000 because ten of those days included the week prior to and the week of standardized testing.  Def.'s Mot., Ex. 1.  Given the option of selecting other days, plaintiff chose to take off May 11-12 using her annual leave.  *Id.*  Other than plaintiff's declaration, there is no mention in the record of plaintiff's requests for sick leave and annual leave on other dates.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is granted to the movant if it has shown, when the facts are viewed in the light most favorable to the non-movant, that there are no genuine issues of material fact in dispute and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56(c). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When evaluating a summary judgment motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255; *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).

The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C.Cir. 1996).

### B. Burdens of Proof

Plaintiff presents no direct evidence that defendant discriminated against her because of her religion. In the absence of direct evidence, the Court turns to the framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

It is the plaintiff's initial burden in a Title VII action to establish a *prima facie* case of discrimination by a preponderance of the evidence. *McDonnell Douglas v. Green*, 411 U.S. at 802; *Stella v. Mineta*, 284 F.3d 135, 144 (D.C.Cir. 2002). A plaintiff constructs a *prima facie* case of employment discrimination "by establishing that: '(1) she is a member of a protected

4

class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Stella v. Mineta*, 284 F.3d at 145 (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C.Cir. 1999)).

If a plaintiff succeeds in making out a prima facie case of discrimination, the burden shifts to the defendant to rebut the presumption of discrimination by producing "evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C.Cir. 1998) (citation omitted); *see Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). At this point, the presumption of discrimination generated by the *prima facie* showing drops from the case, and the plaintiff has an opportunity to present evidence that religion, not defendant's proffered reasons, was the true reason for the adverse employment action. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. at 254-55; *Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 761 (D.C.Cir. 2002).

*C. Plaintiff does not present a prima facie case of discrimination.*

### 1. Adverse employment action

In order that a Title VII claim proceed, there must be "some form of legally cognizable adverse action by the employer." *Brown v. Brody*, 199 F.3d at 453. Generally, a plaintiff must show that there were "materially adverse consequences affecting the terms, conditions, or privileges of her employment or future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm." *Id.* at 457; *Brodetski v. Duffey*, 141 F.Supp.2d 35, 43 (D.D.C. 2001). Discharge, demotion, or an undesirable reassignment are recognized examples of adverse employment actions for which an employee can bring a Title VII claim. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765

(1998).  Employer actions short of outright firing can be adverse, but not all lesser actions count for purposes of Title VII liability.  *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C.Cir. 2002); *Gary v. Washington Metro. Area Transit Auth.*, 886 F.Supp. 78, 90 (D.D.C. 1995) ("[A]n employee need not be fired, demoted or transferred to make out a case of retaliation.").  Courts have concluded that "interlocutory or intermediate decisions having no immediate effect upon employment . . . were not intended to fall within the direct proscriptions of . . . Title VII."  *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981) (en banc); *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1555 (D.C.Cir. 1997) (noting but not deciding issue); *Bunyon v. Henderson*, 206 F.Supp.2d 28, 30 (D.D.C. 2002) (no adverse employment action found where plaintiff "does not cite any duty that he was given or refused, promotion denied, or raise withheld, as a result of the incident" giving rise to discrimination claim).

Plaintiff alleges generally that Mr. Johnson discriminated against her, insulted her, mistreated her, and otherwise treated her unjustly.  *See* Compl. at 1.  She further asserts that Mr. Johnson scrutinized her classes more closely than he monitored others' classes, refused to complete a Performance Evaluation Plain for her, and denied her requests for leave.  Pl.'s Decl., ¶¶ 28-29, 49, 39-40, 42-46.  Assuming that all of plaintiff's factual allegations are true, none rise to the level of an adverse employment action for purposes of Title VII.[7]

---

[7]     In the alternative, plaintiff contends that she makes out a *prima facie* case of discrimination by showing disparate treatment on the basis of her religion when defendant denied her requests for annual and sick leave.  *See* Pl.'s Opp. at 9-10.  Disparate treatment claims are analyzed under the burden-shifting framework set forth in *McDonnell Douglas*.  *See Brown v. Brody*, 199 F.3d at 452.  To make out a prima facie case, plaintiff must establish that (1) she is a member of the protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.  *See Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1150 (D.C.Cir. 2004).  Plaintiff's failure to show an adverse employment

(continued...)

Defendant evidently planned for plaintiff's return for the 2000-2001 school year.  *See*

Compl. at 3 (alleging that plaintiff "could not go back in September as was scheduled and

planned by Mr. Johnson"); Def.'s Reply, Ex. A (noting plaintiff's nine-day absence from official

duties at start of 2000-2001 school year).  Only after plaintiff tendered her resignation did

defendant terminate her employment.

Plaintiff does not show that any of defendant's alleged actions or omissions resulted in a

meaningful adverse change to the terms, conditions, or privileges of her teaching position.  She

does not allege that defendant disciplined her, demoted her, reduced her pay, or fired her.  Nor

does she allege that the performance expected of her, that is, to teach the second-grade

curriculum to the students in her charge, constituted a change in her duties or work assignments.

Criticism of her classroom management alone does not constitute an adverse employment

action.  *See Bryant v. Brownlee*, 265 F.Supp.2d 52, 61-62 (D.D.C. 2003) (finding that

inconsequential work assignments and criticism of job performance do not rise to the level of

adverse employment actions).  The fact that Mr. Johnson "looked at her . . . bizarrely and coldly

and barely acknowledged her," *see* Pl.'s Decl., ¶¶ 3-4, 7, may have been rude or offensive.

Occasional conduct that wounds or offends, however, does not rise to the level of adverse action.

*See Roberts v. Segal Co.*, 125 F.Supp.2d 545, 549 (D.D.C. 2000) (getting the "cold shoulder"

from co-workers did not constitute a materially adverse consequence or disadvantage in the terms

and conditions of her employment establishing an adverse personnel action); *Childers v. Slater*,

44 F.Supp.2d 8, 19 (D.D.C. 1999), *vacated in part on other grounds*, 197 F.R.D. 185, 191

---

[7](...continued)
action necessarily means that her disparate treatment claim fails.

(D.D.C. 2000).  Failure to receive a courtesy does not constitute an adverse employment action.

*See Raymond v. United States Capitol Police Bd.*, 157 F.Supp.2d 50, 56 (D.D.C. 2001).

Subjective injuries, such as public humiliation or loss of prestige, are not adverse employment

actions.  *Forkkio v. Powell*, 306 F.3d at 1130-31.  "[F]ederal courts cannot be wheeled into

action for every workplace slight, even one that was possibly based on protected conduct."

*Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 765 (D.C.Cir. 1997).

2. <u>Hostile work environment constructive discharge</u>

Because of the alleged difficulties Mr. Johnson imposed, plaintiff states that she "could

not imagine working in this environment for another year."  Pl.'s Decl., ¶ 55.  According to

plaintiff, Mr. Johnson "deliberately made [her] working conditions so intolerable that [she]

would face no other option except to resign."  *Id.*, ¶ 54.  Proceeding on an alternate theory of

hostile work environment, plaintiff argues that she adequately presents a *prima facie* case of

hostile environment constructive discharge. *See* Pl.'s Opp. at 8-9.

To establish hostile work environment, an employee must show that harassing behavior is

"sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment."  *Meritor*

*Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (citation omitted).  "[W]hether an

environment is 'hostile' or 'abusive' can be determined only by looking at all of the

circumstances," which may include "the frequency of the discriminatory conduct; its severity;

whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

unreasonably interferes with an employee's work performance."  *Harris v. Forklift Sys., Inc.*, 510

U.S. 17, 23 (1993).  "Conduct that is not severe or pervasive enough to create an objectively

8

hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Id.*, 510 U.S. at 21.

A compound claim of hostile environment constructive discharge requires an additional showing.  Plaintiff also must "show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pennsylvania State Police v. Suders*, 542 U.S. 129, ___, 124 S.Ct. 2342, 2354 (2004).  A finding of constructive discharge requires that "the employer deliberately made working conditions intolerable and drove the employee out." *Mungin v. Katten Muchin & Zavis*, 116 F.3d at 1558; *Katradis v. Dav-El of Washington*, D.C., 846 F.2d 1482, 1485 (D.C.Cir. 1988) (quoting *Atlantic Richfield v. District of Columbia Commission on Human Rights*, 515 A.2d 1095, 1101 (D.C. 1986)) (requiring plaintiff to show "not only discrimination, but also that the employer deliberately made working conditions intolerable and drove the employee into an involuntary quit.").  A plaintiff's failure to show a hostile work environment necessarily means that the constructive discharge claim fails.  *See Morse v. Giant Food Inc.*, No. 2003-0087, 2005 WL 83338 *9 (D.Md. Jan. 14, 2005) (incidents giving rise to retaliatory harassment claim were not so pervasive that resignation was reasonable response).

In support of her hostile work environment claim, plaintiff points to the same alleged discriminatory acts which failed to make out a *prima facie* case of discrimination: transferring students into and out of her class, denying her requests for classroom assistance, scrutinizing and criticizing her performance, and failing to treat her with the courtesy and respect she felt was owed to her.  These events and conditions plaintiff presents are not so frequent, pervasive or severe as to create a hostile work environment.  Further, the only evidence in the record linking these alleged discriminatory acts to plaintiff's Muslim religion is plaintiff's own declaration.

9

*See, e.g.,* Pl.'s Decl., ¶¶ 4, 9, 11.  Her self-serving declaration alone will not foreclose the granting of summary judgment or create a genuine issue of material fact.  *See Tolson v. James*, 315 F.Supp.2d 110, 116 (D.D.C. 2004); *Carter v. George Washington Univ.*, 180 F.Supp.2d 97, 111 (D.D.C. 2001) (granting summary judgment on constructive discharge in part because plaintiff's self-serving affidavits did not establish genuine issue of material fact); *Remedios Jose v. Hosp. for Sick Children*, 130 F.Supp.2d 38, 43 (D.D.C. 2000) (plaintiff's own deposition testimony insufficient to establish pretext rebutting employer's legitimate nondiscriminatory reason for terminating her employment).

Because plaintiff has failed to show a *prima facie* case of discrimination based on her religion by a preponderance of the evidence, the Court will grant summary judgment for defendant.  *See Dobbs v. Roche*, 329 F.Supp.2d 33, 42 (D.D.C. 2004) (granting summary judgment without "delv[ing] into analysis of the third and final prong of the plaintiff's *prima facie* case" absent showing of adverse employment action).

## III.   CONCLUSION

The Court concludes that plaintiff has failed to make out a *prima facie* case of discrimination because of her religion.  Accordingly, the Court will grant defendant's motion for summary judgment.  An Order consistent with this Memorandum Opinion will be issued separately.

JAMES ROBERTSON
United States District Judge